Date signed February 27, 2012



_____
PAUL MANNES
U. S. BANKRUPTCY JUDGE

## UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF MARYLAND
### at Greenbelt

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| ROBERT F. ROOD, IV | : | Case No. 08-17199PM |
| THE SOURCE, LLC | : | Case No. 08-26854PM |
| BLUE HORSESHOE PORTFOLIO | : | Case No. 08-26859PM |
|    SERVICES, LLC | : | |
| LEVEL ONE CAPITAL PARTNERS, LLC | : | Case No. 08-26862PM |
| BLUE HORSESHOE CAPITAL, LLC | : | Case No. 08-26865PM |
| MATTEHORN FINANCIAL, LLC | : | Case No. 08-26866PM |
| LEVEL ONE CAPITAL PARTNERS, | : | Case No. 08-27099PM |
|    a MD LLC | : | |
|         Debtors | : | Chapter 7 |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |
| GARY A. ROSEN, TRUSTEE | : | Jointly Administered Under |
| | : | Case No. 08-17199PM |
|         Plaintiff | : | |
|    vs. | : | Adversary No. 11-0023PM |
| | : | |
| COGGINS & HARMAN, P.A. | : | |
| JOHN H. HARMAN | : | |
|         Defendants | : | |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | : | |

### MEMORANDUM OF DECISION

This case began with a petition filed by Robert Rood IV ("Rood"), the principal and owner of all the equity in the three entities whose transfers form the basis of this cause of action. As summarized in the case of *In re Robert F. Rood, IV*, 459 B.R. 581 (BC Md. 2011), Rood and his associates obtained over $13 million from the Southern Management Corporation Retirement Trust through a fraudulent scheme of converting funds entrusted to him for the

purpose of funding loans purportedly obtained by him for the pension fund.  Some of these loans were paid off by the borrowers and the proceeds retained by Rood; other loans were funded by the trust but not made, contrary to Rood's representations, and others were outright frauds.  As a result, the trust holds a non-dischargeable judgment against Rood in the sum of $13,876,353.47.  In addition, Mr. Rood's discharge was denied.

In this adversary proceeding Gary A. Rosen, Chapter 7 Trustee, for Robert F. Rood, IV, The Source, LLC, Blue Horseshoe Portfolio Services, LLC, Level One Capital Partners, LLC, Blue Horseshoe Capital, LLC, Mattehorn Financial, LLC, and Level One Capital Partners, a Md. LLC, sued the law firm of Coggins & Harman, P.A. and John H. Harman, to recover funds paid to the Defendant firm by certain Debtors for rent and legal fees for which the Trustee argues that these Debtors received no reasonably equivalent value.[1]  The Trustee seeks recovery under § 548(a) of the Bankruptcy Code that encompasses both actual fraudulent intent, that is not an issue here, or constructively fraudulent transfers.  Because it is uncontested that the Debtors were insolvent during the two years prior to December 18, 2008, the date the entities' bankruptcy cases were filed, the issue presented is whether reasonably equivalent value was given to Coggins and Harman P.A. in exchange for the payments made by them.  The parties filed a Stipulation of Fact as to the dates and amounts of the transfers that are in issue.

In the leading case of *In re Jeffery Bigelow Design Group, Inc.*, 956 F.2d 479, 484 (CA4 1992), the Court of Appeals defined the trustee's burden:

> For the constructive fraudulent transfer count to succeed, the trustee must show that the debtor received less than reasonably equivalent value in exchange for its payments and that the debtor was insolvent at the time. 11 U.S.C. § 548(a)(2) (1988).  Because it is uncontested that the debtor was insolvent during the period one year prior to the bankruptcy, the issue is whether reasonably equivalent value was given in exchange for the payments.  In explaining the phrase "reasonably equivalent value," one commentator has stated:
>
> Reasonably equivalent value is not susceptible to simple formulation....  The focus is on the consideration received by the debtor, not on the value given by the transferee.  The purpose of fraudulent transfer law is the preservation of the debtor's estate for the benefit of its unsecured creditors. Consequently, what constitutes reasonably equivalent value must be determined from the standpoint of the debtor's creditors....

---

[1] While Mr. Harman is a separately named Defendant, the court finds nothing in this record to support his individual liability.  For a number of years the firm represented Robert Rood IV generally.

> Jack F. Williams, "Revisiting the Proper Limits of Fraudulent Transfer Law," 8 Bankr.Dev.J. 55, 80 (1991) (footnotes omitted) (emphasis added). Hence, the proper focus is on the net effect of the transfers on the debtor's estate, the funds available to the unsecured creditors. As long as the unsecured creditors are no worse off because the debtor, and consequently the estate, has received an amount reasonably equivalent to what it paid, no fraudulent transfer has occurred.

The one-year period was extended to two years by the 2005 amendments to the Bankruptcy Code. As to payments made more than two years before the filing of the case, the Trustee relies upon § 544(a) and (b)(1) of the Bankruptcy Code that provide:

> **§ 544. Trustee as lien creditor and as successor to certain creditors and purchasers.**
>
> (a) The trustee shall have as of the commencement of the case and without regard to any knowledge of the trustee or of any creditor, the rights and powers of, or may avoid any transfer of property of the debtor or any obligation of the debtor that is voidable by—
> (1) a creditor that extends credit to the debtor at the time of the commencement of the case, and that obtains, at such time and with respect to such credit, a judicial lien on all property on which a creditor on a simple contract could have obtained such a judicial lien, whether or not such a creditor exists;
> (2) a creditor that extends credit to the debtor at the time of the commencement of the case, and obtains, at such time and with respect to such credit, an execution against the debtor that is returned unsatisfied at such time, whether or not such a creditor exists; or
> (3) a bona fide purchaser of real property, other than fixtures, from the debtor, against whom applicable law permits such transfer to be perfected, that obtains the status of a bona fide purchaser and has perfected such transfer at the time of the commencement of the case, whether or not such a purchaser exists.
> (b)(1) Except as provided in paragraph (2), the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

As explained by Judge Schneider in the case of *In re Fabian*, 458 B R 235, 260-261 (BC Md. 2011):

> The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") (Pub. L. 109–8, 119 Stat. 23, enacted April 20, 2005), amended

Section 548(a) to extend the "reach back" period from one to two years prior to the date of filing of the petition to avoid fraudulent conveyances in bankruptcy cases filed after April 21, 2006. However, because the SPI Petition Date was August 31, 2004, the avoidance of fraudulent conveyances in the instant case is governed by the former statute, and the one-year period is applicable. More importantly, however, by invoking the Maryland Uniform Fraudulent Conveyances Act, pursuant to Section 544(b), the Trustee has the ability of avoiding fraudulent conveyances that occurred during the three-year period before filing, pursuant Md. Courts and Judicial Proceedings Code Ann., § 5–101.

In order to invoke the provisions of the State fraudulent conveyance law, pursuant to Section 544(b), and thereby benefit from the three-year reach back period, the Trustee must allege the existence of an actual creditor who could have avoided the fraudulent conveyance. The failure to allege the existence of such a creditor, whether identified or unidentified, has been held to be fatal to the right to avoid fraudulent conveyances that occurred before the one-year period authorized in the Bankruptcy Code. *See Campbell v. Cathcart*, 380 B.R. 407 (BC .S.C.2006); *Field v. Montgomery County, Md.* 177 B.R. 58, 64 (BC Md.1995); and *Tryit Enters. v. Gen. Elec. Capital Corp.,* 121 B.R. 217, 221 (BC S.D.Tex.1990), cited in *Air Cargo, Inc. Litigation Trust v. i2 Tech., Inc.* (*In re Air Cargo, Inc.*), 401 B.R. 178, 193 (BC.Md.2008).

The trustee has the ability to avoid a fraudulent conveyance occurring during the three-year period before filing by invoking the Maryland Uniform Fraudulent Conveyances Act, MD. CODE ANN. COM. LAW 15-201 *et seq.* (2003). The Trustee seeks relief as well in Count III of the Complaint based upon conveyances made from the Defendant's IOLTA Escrow Account.

The court finds that the Trustee has not sustained his burden with respect to Counts II and III of the Complaint. With respect to Count II, the Trustee neither pleaded nor proved the existence of an actual creditor in the reach-back period commencing with the filing of the corporate cases on December 18, 2008. With respect to the alleged post-petition transfers, the court finds as a fact that these transfers represented money deposited in the trust account by Robert Rood IV's father, Robert Rood III, and were never property of the estate. Robert Rood III placed the money in the trust account, $5,000.00 of which was transferred in settlement of litigation in the Capital Marin LLC collection case against the Debtor (Plaintiff's Ex-87). Inasmuch as these funds, and the so-called Robert Rood Deposit (Plaintiff's Exhibit 25), were never property of the estate, the court finds that Plaintiff has no claim against these funds.

The principal support for the Trustee's case comes from the expert testimony of Suzanne Hillman and the records reconstructed by her from subpoenaed documents, including those obtained while she was acting for the State Court Receiver, Thomas Murphy. As stated before in

the history of this case, the court does not find any evidence of actual fraudulent intent. The issue as stated was whether Blue Horseshoe Portfolio Services, LLC, The Source, LLC, and Level One Capital Partners, LLC, received less than a reasonably equivalent value in exchange for their transfers.

As stated above, the Complaint deals with two categories of payments made by the Debtors – payments for legal fees charged by the Defendant firm and payments to the Defendant firm for lease of space. Robert Rood IV, Marco Sanchez, and Bay Capital Corporation were the sublessors from the Defendant. At no time were the entities who actually paid the rent obligated under the subleases. While Mr. Harman testified that various unidentified employees of the several individual entities were present in the premises from time to time, they could not be identified as employees of any particular entity. The obligation to pay rent was that of the sublessees. But neither they nor Rood never paid anything on this account. If there was any benefit to the parties paying the rent, it was minimal at best. There was no evidence of the existence of an oral or written lease between The Source, Level One Capital Partners, LLC or Blue Horseshoe Portfolio Services, LLC and the Defendant.

The amount paid to the Defendant firm under the sublease in the carryover period was calculated as a simple reimbursement of the pro rata cost per square foot paid by the Defendant firm to its landlord. It was a pass-through, nothing more, without any premium or add-on. From the initiation of the arrangement until the filing of the Rood bankruptcy case, the bills for the subleased space were addressed solely to Rood, and thereafter the bills were addressed to the "Rood Entities." The subleases were in Rood's name, as well as the names of some other entities not involved in this dispute, but not in the name of the parties on whose behalf the Trustee seeks recovery. The rent payments were made for Rood's benefit only. The entities paying the rent did not receive fair consideration for the payments. Several entities received some mail at Defendant's office, and the three who made payments on the sublease were part of a group of firms involving Rood.

Defendant may not rely on the alter ego doctrine as a defense. As stated in *Lumpkin v. Envirodyne Industries, Inc.,* 933 F.2d 449, 460 (CA7 1991), the "*alter ego* doctrine is a sword, not a shield, the basis for a cause of action, not a defense." This proposition was elaborated in *Mann v. Hanil Bank*, 920 F. Supp. 952-953 (E.D, Wisc. 1996):

> Second, a party invoking the alter ego doctrine is required to show that some unfair burden will be imposed upon it if the corporate form is respected.

>The Korean Banks have failed to do so.  The alter ego doctrine is usually invoked to allow a plaintiff to "pierce the corporate veil to impose liability on a defendant who unjustly seeks protection in the  corporate form." *Lumpkin v. Envirodyne Industries, Inc*., 933 F.2d 449, 460 (7th Cir.1991), *cert. denied*, 502 U.S. 939, 112 S.Ct. 373, 116 L.Ed.2d 324 (1991). *See also, Select Creations*, 852 F.Supp. at 773 ("[I]f an intracorporate affiliation is devised for or is being used to accomplish an improper or unlawful purpose, equity has the authority to tear down technical legal barriers ... and grant appropriate relief.") (quoting 1 Fletcher Cyclopedia Corporations § 41.10 at 157).  Here, the defendants invoke the alter ego doctrine as a defense to liability, not as a means for imposing liability upon a corporate entity structured for an improper purpose.  This is not an appropriate use for the alter ego doctrine: "The alter ego doctrine is a sword, not a shield, the basis for a cause of action, not a defense." *Lumpkin*, 933 F.2d at 460.  *See also, Matter of Xonics Photochemical*, 841 F.2d 198, 201 (7th Cir.1988) ("[T]here is no 'automatic piercing of the corporate veil' in affiliation settings.  The assets of affiliated corporations are to treated as a common pool available to creditors of each affiliate unless unusual circumstances are present that would  make it inequitable to allow the other affiliates to set up the principle of limited liability....").  We are not persuaded by the defendants' argument that *Lumpkin* is distinguishable because the defendants here invoking the doctrine did not create the corporate structures for improper purposes; rather, they are innocent third parties.  Clearly, the Korean Banks are less culpable than the defendant in *Lumpkin* which sought to disregard its own corporate form. However, in our view, the defendants' theory calls for a considerable extension of the current scope of the alter ego doctrine, one unjustified in the circumstances here present.

The invoices for legal services that are claimed to be the reasonably equivalent value provided the payers (Plaintiff's Exhibits 30-52) were, through the bill rendered June 2, 2008, all rendered solely to Rood.  After he filed his bankruptcy petition under Chapter 7 on May 29, 2008, the bills for July 2, 2008, and forward were merely sent to the same address but to the "Rood Entities."  A review of those invoices reflects a minimal if any connection to work done for the parties paying the bills.  The work was done for the Debtor, but the payments were made by the entities from their funds.  The court finds that the Plaintiff has sustained his burden of proof that there was no reasonably equivalent value for the payment of the legal bills by these Debtors.  If they appeared in any litigation, they were nominal defendants at best.

Defendants also urge that the Trustee failed to prove the insolvency of the transferors.  As stated, the court found the testimony of Suzanne Hillman to be credible in all respects and based upon a thorough analysis of the situation of the parties involved.  While she was handicapped by the absence of records in readily ascertainable form, and perhaps by the spoliation of records, she did a competent job in creating the record from what was available to

her. In the final analysis, the source of income that these entities had from anyone other than the trust is a mystery.

While Ms. Hillman testified that there were creditors in existence in the period within the reach-back period of Section 544(b), none of those creditors were identified and none were shown to be in existence in the time of the commencement of this case. For this reason, the Complaint fails as to payments made prior to the two year reach back period of 11 U.S.C. § 548(a)(1).

In summary, the court finds that the Trustee has sustained his burden of proof as to the absence of reasonably equivalent value required by 11 U.S.C. § 548(a) that the debtors that were the source of the payments received by the Defendant firm less than a reasonably equivalent value from the transfers in issue under Count I. *Cf. Rubin v. Mfrs. Hanover Trust Co.*, 661 F.2d 979, 993 (CA 2 1981); *In re Knippen*, 355 B.R. 710, 721 (BC N.D. Ill. 2006). The court finds that the Trustee has not sustained his burden with respect to the state court based cause of action pleaded under Count II. The court further finds that the Trustee is not entitled to relief under 11 U.S.C. § 549(a) pleaded under Count III, and that the Trustee is entitled to the relief sought under Count IV to the extent he prevails under Count I, and that no relief need be granted as to Count V.

The Trustee shall submit an order on notice to implement the foregoing Memorandum. The order shall specify the sums owed to the individual entity making the payment.

cc:
Gary A. Rosen, Trustee, One Church Street, Suite 802, Rockville, MD 20852
Nelson C. Cohen, Esq., 1800 M Street, NW, Suite 1000, Washington, DC 20036
Wiliam n. Coggins, Esq., 1 Church Street, Suite 603, Rockville, MD 10850

**End of Memorandum**