IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

IN RE:                                  :

ROBERT F. ROOD, IV                      :

THE SOURCE, LLC                         :

BLUE HORESHOE PORTFOLIO
  SERVICES, LLC                         :

LEVEL ONE CAPITAL PARTNERS, LLC :

BLUE HORSESHOE CAPITAL, LLC            :

MATTEHORN FINANCIAL, LLC               :

LEVEL ONE CAPITAL PARTNERS
  A MD LLC,                             :

_____

COGGINS & HARMAN, P.A.                 :

    Appellant/Cross Appellee      :

    v.                             :   Civil Action No. DKC 12-1623

                                   :

GARY A. ROSEN, Trustee                 :

    Appellee/Cross Appellant      :
_____:


**MEMORANDUM OPINION**

    Coggins & Harman, P.A. ("C&H") and Gary Rosen ("Rosen" or "Trustee") each filed appeals from different portions of the March 13, 2012 judgment entered in a bankruptcy adversary proceeding. The issues are fully briefed, and the court now

rules pursuant to Local Rule 105.6, no hearing being deemed necessary. For the reasons that follow, the judgment will be affirmed.

## I. Background

On May 29, 2008, Robert F. Rood, IV filed a voluntary petition under chapter 7 of the bankruptcy code in the United States Bankruptcy Court for the District of Maryland.[1] Gary A. Rosen was appointed the chapter 7 Trustee for Rood, and eventually for The Source, LLC, Blue Horseshoe, Level One, Blue Horseshoe Capital, LLC, Mattehorn Financial, LLC, and Level One Capital Partners, a Md. LLC, entities wholly owned and managed by Rood. These entities filed for bankruptcy under chapter 7 on December 18, 2008.

On January 21, 2011, the Trustee filed an adversary proceeding against C&H, a law firm, and one of its partners, John Harman, to recover legal fees and rent paid to the firm by three of these entities — The Source, Blue Horseshoe, and Level One (together, "the Entities") — prior to the filing of bankruptcy, as well as a number of post-petition transfers from

---

[1] Robert Rood IV ("Rood") and his associates obtained over $13 million from Southern Management Corporation Retirement Trust ("SMCRT"), a pension plan that manages retirement funds for approximately 1,250 employees of Southern Management Corporation. A full discussion of these underlying facts is included in an earlier opinion discussing Rood's bankruptcy proceedings at *In re Rood*, 482 B.R. 132, 136-41 (D.Md. 2012).

the Entities to C&H.  (ECF No. 4-5).  Harman was later dismissed as a defendant.  (ECF Nos. 4-13, 4-14).

The legal fees arose from the following situations:  First, on January 24, 2006, Rood and Level One Capital Partners, LLC (a Nevada LLC) ("Level One") entered into a loan agreement with Capital Marin, LLC, for Rood and Level One to purchase real property in Winston-Salem, North Carolina.  (ECF No. 10-10, at 4).  On January 5, 2007, Capital Marin sued Rood and Level One in Montgomery County Circuit Court to enforce a confessed judgment arising out of the loan contract.  (ECF No. 10-39, at 3).  Ultimately, the confessed judgment was vacated, and the parties entered into a "Stipulation and Settlement Agreement" in March 2008.  (ECF No. 11, at 15).  Second, a restaurant, Village Bar and Grill, sued Rood in state court in connection with lease financing.  (ECF No. 7, at 16).  Level One and Blue Horseshoe Portfolio Services, LLC ("Blue Horseshoe") were also named defendants.  C&H represented Rood and the entities in both lawsuits.  In 2006, C&H also collected rent from The Source and Level One, in exchange for the use of office space in the suite that C&H rented in Silver Spring, Maryland.

As currently at issue in these appeals, the second amended complaint sought to recover from C&H pursuant to 11 U.S.C. §§ 548 and 544:  (1) $64,200 in legal fees paid to C&H in 2007 and 2008 by the Entities; and (2) payments of $50,844.90 made by the

3

Entities for rent of office space controlled by C&H, and one additional $1,000 payment to C&H for legal services, all made in 2006. (ECF No. 4-15).  The Trustee argued that these transfers were all fraudulently conveyed because the Entities did not receive "reasonably equivalent value" in exchange for the money transferred.[2]

A trial was held before United States Bankruptcy Judge Paul Mannes on January 10-11, 2012.  Judge Mannes issued a memorandum of decision finding in favor of the Trustee as to the legal fees, concluding that he was entitled to recover legal fees totaling $64,200 paid by the entities to C&H in 2007-08, the two years before the bankruptcy filing.  As to the rent and other legal fees, Judge Mannes found in favor of C&H.  The Trustee moved for reconsideration, but the motion was denied.  As noted, both C&H and the Trustee filed appeals.

## II.  Standard of Review

The district court reviews a bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.  *In re Official Comm. of Unsecured for Dornier Aviation (N. Am.), Inc.*, 453 F.3d 225, 231 (4th Cir. 2006); Fed.R.Bankr.P. 8013.  "The

---

[2] The Trustee also relied upon 11 U.S.C. § 549 to attempt to recover post-petition transfers made by Rood and the Entities to C&H.  Judge Mannes ruled against the trustee on that claim, and there was no appeal from that aspect of the judgment.

Supreme Court of the United States has held that '[a] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *In re Fitzwater*, No. 2:11-cv-00934, 2012 WL 4339559, at *2 (S.D.W.Va. Sept. 21, 2012) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948); *see also In re Broyles*, 55 F.3d 980, 983 (4th Cir. 1995). "On legal issues, this [c]ourt 'must make an independent determination of the applicable law.'" *In re Fabian*, 475 B.R. 463, 467 (D.Md. 2012) (quoting *In re Jeffery Bigelow Design Grp., Inc.*, 127 B.R. 580, 582 (D.Md. 1991)). With respect to the bankruptcy court's application of law to the facts, the district court reviews for abuse of discretion. *In re Fabian*, 475 B.R. at 467 (citing *In re Robbins*, 964 F.2d 342, 345 (4th Cir. 1992)).

## III. Analysis

C&H challenges the bankruptcy court's ruling in favor of the Trustee based on the factual finding that the entities did not receive "reasonably equivalent value" in exchange for the $64,200 they paid C&H for legal services in 2007-08. C&H argues that Judge Mannes clearly erred when he concluded that the legal services rendered by C&H for which the entities paid were not performed on behalf of both Rood and the entities, but merely for Rood's personal benefit. The Trustee argues that the court

erred in ruling against him as to the rent and additional legal
fees, contending that he established that the entities had
actual creditors at all relevant times to allow him to recover
the 2006 rent payment and legal fee transfers under § 544 and
the MUFCA.

### A.   Legal Fees of 2007-2008

To recover a fraudulent transfer under § 548, a "trustee
must show that the debtor received less than reasonably
equivalent value in exchange for its payments and that the
debtor was insolvent at the time." *In re Jeffery Bigelow Design
Grp., Inc.*, 956 F.2d 479, 484 (4th Cir. 1992).  Pursuant to this
statute, the Trustee recovered transfers made to C&H for the two
years prior to the bankruptcy filings, 2007-08.

### 1.   No Clear Error in Determination that the Legal Services Provided by C&H Did Not Benefit Entities

It is undisputed that the transferring entities were
insolvent at all relevant points in time.  Hence the parties
focus on whether the Entities received reasonably equivalent
value in return for the payments they made.

The bankruptcy court held that the Trustee established that
the legal fees paid by the Entities to C&H were constructively
fraudulent, concluding:

> A review of th[e] invoices reflects a
> minimal if any connection to the work done
> for the parties paying the bills.  The work
> was done for the Debtor [Rood], but the

6

> payments were made by the entities from
> their funds. . . . If [the entities]
> appeared in any litigation, they were
> nominal defendants at best.

(ECF No. 4-29, at 6). On appeal, C&H argues that the bankruptcy court erred in its findings and that the entities received valuable service in exchange for the fees because (1) the entities were named defendants in litigation related to the legal services rendered in exchange for the fees; (2) the checks used to pay the fees and the corresponding invoices contained the names of the entities; and (3) Mr. Harman testified that C&H provided legal services to the entities.

C&H offers little more than conclusory allegations that the Entities received "reasonably equivalent value" in exchange for the fees, and points to no specific facts in the record to support those assertions. C&H does not describe the nature of the legal disputes or the legal work done for the Entities, separate and apart from the work done for Rood. The firm provides nothing to undermine the bankruptcy court's conclusion that the Entities were merely nominal defendants and received no value in exchange for the legal fees paid.

It does not matter that the checks used to pay C&H were issued from accounts owned by the Entities. The fraudulent transfer analysis centers on whether the entities received value in return for the fees. The bankruptcy court correctly

concluded that the fee invoices do not establish the entities received value in return for those fees. Every invoice C&H issued to Rood and his entities was addressed to Mr. Rood at his home address. Only after Mr. Rood filed for bankruptcy did C&H begin addressing the invoices to the "Rood Entities," while continuing to mail them to Rood's home. (ECF Nos. 10-23 through 29). Indeed, the first invoice billed to "Rood Entities" transferred the $7,088.81 balance that was originally billed only to Mr. Rood himself. (ECF Nos. 10-22 and 23). Further, the invoices themselves – nine in total – contain only one line entry even mentioning the names of the entities themselves. (ECF No. 10-24).[3] C&H points to no other documentation to demonstrate any benefit the entities received in exchange for the $64,200 they paid C&H for legal services.

Nor does Mr. Harman's testimony establish that C&H performed work for the entities that paid its bills. Mr. Harman testified only that C&H represented the entities alongside Mr. Rood in two "significant" matters, and that the firm provided the entities with "a variety of services." (ECF No. 10-30, at 102-04). Mr. Harman offered little additional detail in support of these assertions.

---

[3] The Trustee also submits invoices from 2005, demonstrating work done by C&H for Mr. Rood regarding the formation of The Source and Level One; he does not, however, seek to recover fees associated with these invoices. (ECF No. 10-12 and 10-13).

Moreover, Judge Mannes had opportunity to observe the direct and cross examinations of Mr. Harman. His determination of the witness's credibility must be given due regard. Fed.R.Bankr.P. 8013. Given the broad, vague testimony of Mr. Harman, and the scant documentary evidence to support his assertions, there is no ground upon which the bankruptcy court's finding of fact could be deemed "clearly erroneous."[4]

**B.   Rent and Other Legal Fees**

**1.   No Clear Error in Determining Trustee Did Not Establish the Existence of an Actual Creditor**

Section 544(b)(1) of the Bankruptcy Code allows a trustee to avoid fraudulent transfers that are voidable by unsecured creditors via applicable state law under § 502. The Trustee relied upon the Maryland Uniform Fraudulent Conveyance Act, Md. Code, Com. Law § 15-201 et seq. ("MUFCA") to seek to recover transfers made to C&H by Level One and The Source in 2006, that is, between two and three years prior to the bankruptcy filing.

The Trustee's primary argument on appeal is that the bankruptcy court erroneously found that Level One and The Source

---

[4] C&H also asserts that the transfers are not avoidable because the alter ego doctrine eliminates any distinction between Mr. Rood and the entities. The bankruptcy court correctly concluded that "the alter ego doctrine is a sword, not a shield, the basis for a cause of action, not a defense." (ECF No. 4-29, at 5) (quoting *Lumpkin v. Envirodyne Indus. Inc.*, 933 F.2d 449, 460 (7th Cir. 1991). The Appellant makes no persuasive argument that this well-settled rule of law should be altered or was applied incorrectly in this case.

did not have actual creditors in 2006, when they made the transfers that the Trustee sought to avoid pursuant to § 544 and the MUFCA.  This argument misconstrues what the bankruptcy court concluded, however.  The bankruptcy court concluded that Mr. Rosen adduced evidence that creditors existed in 2006, but failed to identify these creditors and show that they were in existence on December 18, 2008,[5] the date the entities filed for bankruptcy.  In this appeal, the Trustee does not show that this finding by the bankruptcy court was clearly erroneous.

Section 544(b)(1) of the Bankruptcy Code allows trustees to avoid fraudulent transfers that are voidable by unsecured creditors via applicable state law under § 502.  That section allows a claim if no party in interests objects, and further states:  "If such an objection to a claim is made, the court . . . shall determine the amount of such claim in lawful currency of the United States *as of the date of the filing of the petition*."  11 U.S.C. § 502(b) (emphasis added).  Filing the petition for bankruptcy fixes the rights of the estate and creditors.  To recover transfers pursuant to § 544(b)(1), therefore, the Trustee "must identify a creditor with an allowable unsecured claim who had an allowable claim against the debtor on the date

---

[5] There is some dispute as to whether the entities filed for bankruptcy on December 18 or December 28, 2008.  A review of the record shows that the entities filed for chapter 7 bankruptcy on December 18, 2008.

the bankruptcy petition was filed." *In re DLC, Ltd.*, 295 B.R. 593, 605 (B.A.P. 8th Cir. 2003) (citing *Acequia, Inc. v. Clinton (In re Acequia, Inc.)*, 34 F.3d 800, 807 (9th Cir. 1994)).

Under the MUFCA, the Trustee's ability to recover transfers made in 2006 depends on his ability to establish that: (1) a creditor existed at all relevant points in 2006; and (2) that creditor still had a viable claim against the debtor entities at the time the bankruptcy petition was filed, in 2008. *See, e.g., Karnes v. McDowell (In re McDowell)*, 87 B.R. 554, 558 (Bankr. S.D. Ill. 1988) (stating that to prevail under § 544(b), a trustee must show a creditor had a claim against debtor defendant at the time the transfers were made that is still viable at the filing of the bankruptcy petition). Only if both of these conditions are met can the Trustee stand in the shoes of that creditor.

Below, the bankruptcy court concluded that the Trustee did not meet his burden of proof with regard to the second prong, and the Trustee offers no evidence other than conclusory statements in his briefs to suggest that this finding was clearly erroneous. C&H admits that the evidence at trial established that Level One and The Source had creditors at some time in 2006, but argues that the Trustee failed to establish that an actual creditor existed for each entity on each transfer

date, and that those creditors' claims against the entities persisted until the date that bankruptcy was filed.

The Trustee identifies two creditors of Level One and The Source that he argues qualify for payment under § 544(b): Capital Marin LLC and SMCRT. (ECF No. 10, at 10). With respect to SMCRT, the Trustee cites expert testimony concluding that SMCRT is "a substantial creditor in these cases." (ECF No. 10-8, at 3, Test. of Suzanne Hillman). Ms. Hillman further testified that SMCRT also bought loans from Level One and Blue Horseshoe. (ECF No. 8, at 35). None of this testimony establishes the details or specific dates of SMCRT's status as a creditor for either entity. Finally, the Trustee points to nothing in the record that indicates SMCRT was a creditor to both Level One and The Source on every date that each transfer was made. Therefore, SMCRT cannot qualify as a creditor under § 544(b).

With respect to Capital Marin, the bankruptcy court concluded that it was a creditor to Level One in 2006, based on Ms. Hillman's testimony and evidence of a loan between the entities made at that time. First, the Trustee condedes that Ms. Hillman's testimony only establishes that the earliest Capital Marin could have been a creditor to Level One was January 31, 2006. Because the first three transfers sought were made prior to this date – the checks were all endorsed on

12

January 27 and honored by the bank on January 30 – they cannot be collected by the Trustee.  Further, Capital Marin was never a creditor to The Source, and therefore the rent transfer that it made to C&H cannot be recovered by the Trustee on the basis of Capital Marin's creditor status.  At best, only eleven of the fifteen transfers made in 2006 meet the first prong of the inquiry under § 544(b).

As to the second prong, Ms. Hillman later explained that the property that was the subject of the loan between Rood, Level One, and Capital Marin was foreclosed upon and that a settlement was reached between the parties before bankruptcy was filed.  C&H admits that sometime after settlement, Capital Marin was a creditor to Level One.  (ECF No. 11, at 16).  Neither party, however, introduced a copy of the settlement agreement into evidence, and C&H's papers are silent as to Capital Marin's status as a creditor as of the date of filing, December 18, 2008.  To recover any of these transfers under §544(b), the Trustee must show that Capital Marin's status as a creditor persisted until the date that Level One filed for bankruptcy.  Given the lack of evidence presented on this prong, the bankruptcy court's conclusion that the Trustee failed to meet his burden with respect to transfers sought to be recovered under § 544 was not clearly erroneous.

13

**IV.  Conclusion**

For the foregoing reasons, the judgment of the bankruptcy court will be affirmed.  A separate order will follow.

                                                 /s/
                                          DEBORAH K. CHASANOW
                                          United States District Judge